IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD LUCERO,
On behalf of himself and
All others similarly situated,

        Plaintiff,

vs.                                             No. CIV 09-0532 JB/WDS

BUREAU OF COLLECTION RECOVERY, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Bureau of Collection Recovery Inc.'s Motion to Dismiss and Memorandum Brief in Support of its Motion to Dismiss or, Alternatively, Motion for Summary Judgment, filed December 21, 2009 (Doc. 34)("Motion"). The Court held a hearing on February 2, 2012. The primary issues are: (i) whether Plaintiff Richard Lucero can maintain a cause of action under the New Mexico Collection Agency Regulatory Act, N.M.S.A. 1978, §§ 61-18A-1 through 61-18A-32, ("Collection Agency Regulatory Act"); (ii) whether Lucero has established the existence of a genuine issue of material fact as to any of the theories upon which he bases his claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a through 1692p, ("FDCPA"); and (iii) whether Defendant Bureau of Collection Recovery, Inc. ("BCR") has established that it is entitled to summary judgment based on the affirmative defense in N.M.S.A. 1978, § 61-18A-4(C). The Court will grant the Motion and enter summary judgment on all Lucero's claims. Because Lucero has conceded that he cannot maintain a cause of action under the Collection Agency Regulatory Act, the Court will grant the Motion on those grounds. The Court concludes that Lucero has not established the existence of a genuine issue of

material fact as to his FDCPA claim on the following two theories: (i) violation of the general prohibition against misrepresentations contained in 15 U.S.C. § 1692e on the basis that BCR allegedly misrepresented it was authorized to collect debts; and (ii) violation of 15 U.S.C. § 1692e(10) on the basis that BCR used a false representation or deceptive means to collect debt, because it was not authorized to collect debt under state law.  Additionally, the Court concludes that Lucero has not established the existence of a genuine issue of material fact as to his FDCPA theories under 15 U.S.C. §§ 1692e(5) and 1692f.  The Court concludes entry of summary judgment is appropriate under the controlling law and authority.  Lastly, because BCR has identified no New Mexico rule or regulation upon which it in good faith relied, and because a state law affirmative defense does not provide a defense to a federal cause of action, the Court will not grant summary judgment on that ground relating to BCR's affirmative defense under N.M.S.A. 1978, § 61-18A-4(C).

## FACTUAL BACKGROUND

Lucero disputes some of BCR's asserted facts and includes some of his own asserted facts in his Response.  See Plaintiff's Response to Defendant's Motion to Dismiss [Doc. 34], filed March 12, 2010 (Doc. 50)("Response").  In response to certain arguments BCR raises in the Defendant Bureau of Collection Recovery Inc.'s Reply in Support of its Motion to Dismiss, or Alternatively Motion for Summary Judgment, filed March 26, 2010 (Doc. 53)("Reply"), Lucero provides some additional asserted facts in his Plaintiff's Sur Reply to Defendant's Reply in Support of Motion to Dismiss, filed May 4, 2010 (Doc. 58)("Surreply").  BCR filed no written response to the Surreply and did not contest any of those asserted facts at any of the hearings, and those facts are thus deemed admitted.  See D.N.M.LR-Civ. 56.1(b).  Because the Court and the United States Court of Appeals for the Tenth Circuit have already addressed the parties' arguments regarding an offer of judgment

under rule 68 of the Federal Rules of Civil Procedure, the Court will not set forth any of the parties' asserted facts relating to the offer of judgment BCR gave to Lucero.  See Amended Memorandum Opinion and Order, filed May 6, 2010 (Doc. 60); Judgment at 1, filed April 22, 2011 (Doc. 67-2); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239 (10th Cir. 2011).

        BCR is in the business of debt collection and in general is considered a debt collector under 15 U.S.C. § 1692a(6).  See Motion ¶ 1, at 3 (setting forth this fact); Class Action Complaint for Damages for Violation of the Fair Debt Collection Practices Act and the New Mexico Collection Agency Regulatory Act ¶ 4, at 2 (dated April 30, 2009), filed June 1, 2009 (Doc. 1-1)("Complaint")(admitting this fact).  Lucero received two collection letters from BCR.  See Motion ¶ 1, at 3 (setting forth this fact); Complaint ¶¶ 6-7, at 2 (admitting this fact).  At all times relevant to the Complaint's allegations, BCR was a duly licensed collection agency in the State of New Mexico.  See Motion ¶ 2, at 3 (setting forth this fact); Complaint ¶ 11, at 3 (admitting this fact); Affidavit of Bobbie J. Dunn ¶ 6, at 2 (executed December 4, 2009), filed December 21, 2009 (Doc. 34-1)("Dunn Aff."); Collection Agency License at 1 (dated August 6, 2009), filed December 21, 2009 (Doc. 34-2).[1]  At all times relevant to the Complaint's allegations, Bobbie Dunn served as BCR's licensed manager in New Mexico as N.M.S.A. 1978, §§ 61-18A-8 and 61-18A-10 requires. See Motion ¶ 3, at 3 (setting forth this fact); Complaint ¶¶ 12-13, at 3 (admitting portions of this asserted fact); Dunn Aff. ¶ 4, at 1; Collection Agency Managers [sic] License at 1 (dated August 6,

---

       [1]Lucero disputes that "'at all times relevant' BCR established and maintained 'a full time bona fide collection agency' in the state of New Mexico as required by NMSA 1978, § 61-18A-14." Response ¶ 2, at 1.  BCR does not appear to have set forth the asserted fact which Lucero represents it has asserted.  Because these issues are disputed questions regarding the application of New Mexico law to the facts of this case, the Court will consider these matters disputed to the extent that BCR attempted to set forth that statement for these asserted facts.  Lucero does not dispute, and has admitted in his Complaint, the basic fact that the asserted fact sets forth -- that BCR was licensed at the time the complained of conduct occurred.  See Complaint ¶ 11, at 3 (admitting this fact).

2009), filed December 21, 2009 (Doc. 34-3)("Current Manager's License"); Collection Agency

Managers [sic] License at 1 (dated May 22, 2008), filed December 21 (2009)(Doc. 34-4)("Former

Manager's License").[2]

At all times relevant to the allegations stated in the Complaint, Dunn's addresses on file with

the New Mexico Regulation and Licensing Department ("NMRLD") were P.O. Box. 16035,

Albuquerque, New Mexico, 8791-6035 and 9747 Village Green Drive, Albuquerque New Mexico.

See Motion ¶ 4, at 4 (setting forth this fact); Complaint ¶¶ 15-6, at 3 (admitting this fact); Dunn Aff.

¶ 8, at 2; Former Manager's License at 2.  As of July 10, 2009, Dunn changed her address; the

current addresses she has on file with the NMRLD are P.O. Box 16035, Albuquerque, New Mexico

8791-6035 and 9131 Wimbledon Drive NE, Albuquerque New Mexico.  See Motion ¶ 5, at 4

(setting forth this fact); Dunn Aff. ¶¶ 7-8, at 2; Current Manager's License at 1; Response at 1 (not

disputing this fact).  The Wimbledon Drive address and the Village Green Drive address are

residential addresses.  See Motion ¶ 6, at 4 (setting forth this fact); Complaint ¶ 16, at 4 (admitting

portions of this fact); Dunn Aff. ¶ 10, at 2; Response at 1 (not disputing this fact).  Dunn maintains

a business license with the City of Albuquerque.  See Motion ¶ 7, at 4 (setting forth this fact); Dunn

Aff. ¶ 11, at 2; Business Registration Receipt at 1, filed December 21, 2009 (Doc. 34-5).[3]  It is

---

[2]Lucero disputes that "'at all times relevant' Bobbie Dunn was 'actively in charge of the collection agency for which the license was sought' as required by NMSA 1978, § 61-18A-8." Response ¶ 3, at 1.  BCR does not appear to have set forth the asserted fact which Lucero represents it has asserted.  Because these issues are disputed questions regarding the application of New Mexico law to the facts of this case, the Court will consider these matters disputed to the extent that BCR attempted to set forth that statements for these asserted facts.  Lucero does not otherwise dispute the asserted fact.  See Response ¶ 3, at 1 (not disputing this fact).

[3]Lucero disputes the portion of the asserted fact that this license is a "residential" business license.  Response ¶ 7, at 1.  To controvert this fact, he relies on a portion of Dunn's deposition testimony.  See Deposition of Bobbie Dunn at 71:9-72:6 (dated January 12, 2010), filed March 12, 2010 (Doc. 50-1)("Dunn Depo.").  In this portion of her testimony, the examiner confronts Dunn

disputed whether Dunn maintained a "a bona fide office for BCR's collection activities from her home office at 9747 Village Green Drive, Albuquerque, New Mexico." Motion ¶ 8, at 4 (setting forth this fact).[4]   At all times relevant to the allegations in the Complaint, Dunn conspicuously

_____

with whether this license is a residential business license, and Dunn admits that nowhere on the license does the term residential appear.  See Dunn Depo. at 71:9-72:6.  Drawing all reasonable inferences and resolving all doubts in Lucero's favor, the cited evidence specifically controverts this portion of the proposition regarding whether the license is a residential business license.  See Hunt v. Cromartie, 526 U.S. 541, 551 (1999)(stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party); D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").  Accordingly, the Court will modify the asserted fact and remove the phrase "residential."

[4]To support this asserted fact, BCR relies on statements from Dunn's affidavit to the effect that she has complied with all the requirements to run an office out of her home and Dunn's manager's license that the State of New Mexico issued.  See Dunn Aff. ¶¶ 8, 12-13, at 2; Former Manager's License at 1.  To dispute this asserted fact, Lucero relies on various statements Dunn made during her deposition, including: (i) that she serves as a licensed manager in New Mexico for approximately forty debt collection businesses; (ii) that she has contact with her supervisor at BCR only once a year; (iii) that she receives a limited amount of guidance on her job functions from BCR; (iv) that she has no physical or electronic records relating to Lucero's debt at her office; (v) that she has never talked with her homeowner's association about operating a business out of her home; (vi) that she has no business telephone listing for this office; (vii) that she makes no business decisions about debt collection other than on licensing issues; (viii) that she did not permit Lucero to enter her residence/office when he came to obtain information about his debt; (ix) that Lucero would not have been able to obtain information regarding his debt without producing the notice he had received regarding the debt; (x) that nothing outside her home indicates that it is a business; (xi) that there is a restrictive covenant on her property restricting her use of the property for commercial or non-residential purposes; and (xii) that Dunn has had minimal involvement in debt collection activities.  See Response ¶ 8, at 2; Dunn Depo. at 37:18-38:1, 42:1-24, 43:21-48:4, 51:9-16, 57:11-67:14, 73:15-17, 74:18-76:1, 78:5-79:15.  The Court concludes that the evidence upon which Lucero has relied specifically controverts the asserted fact that Dunn maintained a bona fide office for BCR's collection activities in her home office.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").  Likewise, legal arguments should not be set forth in a party's asserted fact section during summary judgment.  See Ruiz v. City of Brush, No. 05-897, 2006 WL 1816454, at *4 (D. Colo. June 30, 2006)(Nottingham, J.)("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute.  Legal argument . . . should be reserved for separate portions of the brief.'" (alterations in original)).

displayed her manager's license[5] for BCR at her home office.  See Motion ¶ 9, at 4 (setting forth this

fact); Photograph of Bobbie Dunn's License Display at 1, filed December 21, 2009 (Doc. 34-6);

Photograph of Bobbie Dunn's License Display at Her Home Office at 1, filed December 21, 2009

(Doc. 34-7); Response at 2 (not disputing this fact).  Dunn had access to BCR's collection agency

records at her home office if she made a request for the records with BCR; she sometimes received

the records by electronic mail transmission following a request.[6]

    The first time the New Mexico Financial Institutions Division received contact from BCR

with questions concerning the interpretation of any provision of the Collection Agency Regulatory

---

[5]N.M.S.A. 1978, § 61-18A-5(A) requires a person seeking to serve as a manager of a collection agency to obtain a license as follows:

> No person shall conduct within this state a collection agency, act as a collection agency manager or engage within the state in the business of collecting claims for others or of soliciting the right to collect or receive payment from another of any claim or advertise or solicit either in print, by letter, in person or otherwise, the right to collect or receive payment for another of any claim or seek to make collection or obtain payment of any claim on behalf of another without having first applied for and obtained the licenses required by the Collection Agency Regulatory Act.

N.M.S.A. 1978, § 61-18A-5(A).

[6]BCR sets forth the following asserted fact: "At all times relevant to Plaintiff's claims, Ms. Dunn has had electronic access from her home office to BCR's collection agency records." Motion ¶ 10, at 5 (setting forth this fact).  See Dunn Aff. ¶ 15, at 5.  Dunn's Affidavit sets forth that she had "electronic access to BCR's collection agency records upon request for such records" from one of the divisions within BCR.  Dunn Aff. ¶ 15, at 5.  Lucero disputes whether she had electronic access from her home office to BCR's collection agency records and whether this alleged electronic access would satisfy the statutory requirements of N.M.S.A. 1978 § 61-18A-14.  See Response ¶ 10, at 2. Because this is a legal question as to whether these facts satisfy the respect statutory definition of access to records under N.M.S.A. 1978 § 61-18A-14, the Court will consider the issue disputed to the extent it is a legal question.  See Ruiz v. City of Brush, 2006 WL 1816454, at *4 ("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute.  Legal argument . . . should be reserved for separate portions of the brief.'" (alterations in original)).  The Court will modify the asserted fact in a manner consistent with Dunn's Affidavit and her deposition testimony.  See Dunn Aff. ¶ 15, at 5; Dunn Depo. at 63:2-65:19.

Act was in a telephone conversation which occurred on or about September 25, 2009.  See Surreply ¶ 2, at 1-2 (setting forth this fact); Second Affidavit of Henry A. Vigil ¶¶ 1, 5-7, at 1-2 (executed April 30, 2010), filed May 4, 2010 (Doc. 58-1)("Second Vigil Aff."); Deposition of William Verant at 4:1-24 10:24-11:4, 12:9-16, 28:15-24 (dated April 29, 2010), filed May 4, 2010 (Doc. 58-2)(Verant Depo.").[7]  Other than the Collection Agency Regulatory Act and the regulations issued pursuant to that act, there are no internal memoranda, electronic mail transmissions, written communications, studies, inquiries, policy and procedure manuals or statements, rules and regulations, or any other documents related to or concerning the interpretation of the Collection Agency Regulatory Act.  See Surreply ¶ 3, at 2 (setting forth this fact); Second Vigil Aff. ¶¶ 1-4, 8-9, at 1-2; Verant Depo. at 11:5-20, 12:2-5.[8]  The scope of duties that Henry Vigil, Industry Manager for the New Mexico Financial Institutions Division, had at the applicable time periods did not include the formulation of legal interpretations of the provisions of the Collection Agency Regulatory Act.  See Surreply ¶ 4, at 2 (setting forth this fact); Verant Depo. at 12:17-20.[9]  Vigil worked at the NMRLD for approximately twenty-two and a half years.  See Affidavit of Henry A. Vigil ¶ 8, at 2-3 (executed December 15, 2009), filed December 21, 2009 (Doc. 34-8)("Vigil Aff.").  Vigil asserts that, when posed with a factual scenario mirroring BCR's maintenance of its New Mexico office, that BCR is in compliance with the Collection Agency Regulatory Act.  See Vigil Aff. ¶¶ 7-8, at 2-3.  According to William Verant, the director of the Financial Institutions Division

---

[7]BCR did not dispute this fact at any of the hearings or through any written filing.  It is thus deemed admitted.  See D.N.M.LR-Civ. 56.1(b).

[8]BCR did not dispute this fact at any of the hearings or through any written filing.  It is thus deemed admitted.  See D.N.M.LR-Civ. 56.1(b).

[9]BCR did not dispute this fact at any of the hearings or through any written filing.  It is thus deemed admitted.  See D.N.M.LR-Civ. 56.1(b).

of the NMRLD, it would be "problematic" for a licensed manager for a collection agency: (i) to maintain an office in a residence within a gated community; (ii) for that licensed manager to tell the debtor that their residence was not an office and refuse entrance into the office to the debtor; and (iii) for the licensed manager to have no knowledge of the debtor's debt.  See Surreply ¶ 5, at 2 (setting forth this fact); Verant Depo. at 40:4-41:1.[10]  Verant also stated that not maintaining records at a residence or office results in noncompliance with the Collection Agency Regulatory Act's requirements.  See Surreply ¶ 5, at 2 (setting forth this fact); Verant Depo. at 40:4-41:1.[11]

## PROCEDURAL BACKGROUND

On April 30, 2009, Lucero, on behalf of himself and others similarly situated, filed a Class Action Complaint for Damages for Violation of the Fair Debt Collection Practices Act and the New Mexico Collection Agency Regulatory Act in the Second Judicial District Court, Bernalillo County, State of New Mexico.  See Complaint at 1.  The Complaint alleges that BCR is in violation of the requirements for a foreign collection agency, as set forth in the Collection Agency Regulatory Act, and in violation of the FDCPA.  Count I of Lucero's Complaint contains his claims against BCR for violations of the Collection Agency Regulatory Act.  Specifically, Lucero alleges that BCR violated the Collection Agency Regulatory Act, because Dunn failed to: (i) maintain a "full-time bona fide collection agency" in New Mexico at BCR's licensed manager; (ii) have Dunn be actively in charge of the collection agency in New Mexico; (iii) maintain records of BCR's local collection practices at her home office, which is BCR's principal office in New Mexico; and (iv) "conspicuously"

_____

[10]BCR did not dispute this fact at any of the hearings or through any written filing.  It is thus deemed admitted.  See D.N.M.LR-Civ. 56.1(b).

[11]BCR did not dispute this fact at any of the hearings or through any written filing.  It is thus deemed admitted.  See D.N.M.LR-Civ. 56.1(b).

display the required licenses at BCR's principal place of business in New Mexico.  Complaint ¶ 47, at 7.  Count II alleges that BCR violated the FDCPA as a result of the following conduct: (i) engaging in false, deceptive or misleading collection activities by representing that it was authorized to collect debts from Lucero and the members of the class, in violation of the general prohibition against misrepresentations in 15 U.S.C. § 1692e; (ii) threatening to take action that cannot be legally taken against Lucero and the class in violation of 15 U.S.C. § 1692e(5), because BCR could not take any legal action without full compliance with the Collection Agency Regulatory Act; (iii) using false representations or deceptive means to collect or to attempt to collect a debt based on BCR's implicit representation through letters and/or telephone calls to Lucero that it was authorized to collect debts in New Mexico, in violation of 15 U.S.C. § 1692e(10); and (iv) engaging in unfair and unconscionable methods of debt collection in violation of 15 U.S.C. § 1692f by acting unlawfully against Lucero within the New Mexico.  See Complaint ¶ 56, at 8-9.

On March 26, 2010, BCR filed its Motion seeking dismissal of Lucero's claims under rule 12(b)(6) of the Federal Rules of Civil Procedure or alternatively summary judgment.  BCR argues that Lucero cannot maintain a cause of action under the Collection Agency Regulatory Act, because it provides no private right of action.  See Motion at 8-10.  Alternatively, it argues that the asserted facts it has set forth establish that there are no genuine issues of material fact that would support a finding that it has violated the Collection Agency Regulatory Act.  See Motion at 10.  It asserts that Vigil has provided an affidavit in which he interprets the Collection Agency Regulatory Act in a way that establishes that BCR has not violated the act.  See Motion at 10.  It notes that he is "specifically authorized to make disciplinary recommendations to the Director and handles investigations of any alleged violations of the Collection Act."  Motion at 10.  BCR contends that Vigil has concluded that the requirement under the Collection Agency Regulatory Act to maintain

a bona fide collection agency is satisfied "by designating a licensed manager who . . . is responsible for maintaining and displaying a New Mexico license at a physical location within the state of New Mexico and who will be responsible to produce, upon request from the Financial Institutions Division, all records related to collection activity within the state." Motion at 10 (quoting Vigil Aff. ¶ 8, at 2-3).  It asserts that BCR complied with the Collection Agency Regulatory Act by operating BCR's New Mexico office out of Dunn's home office, having Dunn maintain and display BCR's New Mexico license, and having Dunn make herself available to produce any record pertaining to BCR's collection activity upon request from the applicable state agency.  See Motion at 11.  Additionally, BCR contends that it complied with the requirement that it maintain all its records of its local collection agency at its office in New Mexico, because it had electronic access to those records.  See Motion at 11.  Regarding Lucero's asserted FDCPA violations, BCR argues that Lucero's theories rely upon violations of the Collection Agency Regulatory Act.  See Motion at 12.  BCR asserts that Lucero cannot establish a cause of action under 15 U.S.C. § 1692e's general prohibition against misrepresentation's or 15 U.S.C. § 1692e(10), because its license establishes that it was "'authorized' to collect debts in New Mexico."  Motion at 13.  Additionally, BCR contends that Lucero cannot maintain a cause of action under 15 U.S.C. §§ 1692e(5) and 1692f, because it was in compliance with the Collection Agency Regulatory Act during all applicable time periods.  See Motion at 13.

In his Response, Lucero argues that "Counts I and II of plaintiff's complaint, when read together, do state a claim for which relief may be granted and cannot therefore be dismissed pursuant to Rule 12(b)(6)."  Response at 4.  He notes that "[t]he allegations in Count II are based on the alleged violations of the New Mexico Collection Agency Regulatory Act alleged in Count I," including that BCR was not complying with the statutory requirements to collect debt under state

law.  Motion at 4.  He notes that other courts have found that a defendant violates the FDCPA when it engages in collection activities without obtaining a license as required by state law.  See Response at 4.  Lucero argues that "there is a substantial dispute as to whether defendant substantially complied with the requirements of the New Mexico Collection Agency Regulatory Act."  Response at 4.  He also asserts that BCR's "motion is premature," as, under the Joint Status Report and Provisional Discovery Plan, filed August 13, 2009 (Doc. 10), "there was to be no discovery on the merits until the hearing on certification of the class."  Response at 5.  He notes that, "[a]lthough some discovery on the merits has occurred because of defendant's motion, some discovery is still pending and the court's decision should be abated until that discovery is complete and supplementary briefs are filed."  Response at 5.  He contends that Dunn was not actively in charge of the collection agency in New Mexico as New Mexico law requires.  See Response at 5.  He asserts that BCR, in violation of New Mexico law, did not maintain a full time bona fide collection agency in the state and that it did not maintain its records for the local collection agency at the principal office in New Mexico.  See Response at 5-6.  Lucero argues that Vigil's affidavit contains a variety of inadmissible evidence, as he "gives legal opinion about the interpretation of the Collection Agency Regulatory Act by the Financial Institutions Division" and is not competent to give these opinions.  Response at 6.  Lucero notes that Vigil "is not the director" of the respective agency "and he is not a lawyer qualified to give opinions regarding the interpretation of the Act."  Response at 7.  He notes that the officials within the agency in charge of enforcing the Collection Agency Regulatory Act "never asked for an interpretation of the Act's requirements from the Attorney General's office of Department counsel."  Response at 7 (citing Vigil Depo. at 58:6-24, 59:10-13).  Lucero argues that Vigil's interpretation of these statutory requirements conflicts with the act's language and plain meaning.  See Response at 7-9.  Furthermore, he asserts that the Motion

-11-

is premature, because the time for discovery on the merits of the claims had not passed at the time of filing the Motion and because there is additional discovery that he needs to complete in able to appropriately respond to the Motion, including taking a deposition of a person designated by the NMRLD "who will be able to testify concerning the agency's interpretation of the New Mexico Collection Agency Regulatory Act's requirements for doing business in the State of New Mexico." See Response at 9-10.  He requests that he have time to retain experts if necessary and to submit supplemental briefing on these issues.  See Response at 10.

On March 26, 2010, BCR filed its Reply.  BCR argues that Lucero cannot maintain a cause of action under the Collection Agency Regulatory Act, because it provides no private right of action. See Reply at 2.  Alternatively, it argues that the asserted facts it has set forth establish that there are no genuine issues of material fact which would support a finding that it has violated the Collection Agency Regulatory Act.  See Reply at 3.  It asserts that Vigil provides an interpretation of the Collection Agency Regulatory Act to which the Court should defer.  See Reply at 3-7.  It asserts that he is "the individual tasked with enforcing and administering compliance with the Act for the State of New Mexico's Department of Licensing and Regulation Financial Institutions Division for the past 22.5 years."  Reply at 3.  It asserts that Vigil "has found that the requirement that a company 'maintain a full time bona fide collection agency in this state at all times' is fulfilled by designating a licensed manager who is responsible for maintaining and displaying a New Mexico license at a physical location in New Mexico."  Reply at 3 (citing Vigil Aff. ¶ 8, at 2-3).  BCR notes that the agency charged with enforcing the Collection Agency Regulatory Act has never found BCR to be in violation of the act.  See Reply at 4.  With regard to the issue of timeliness, BCR argues that "nothing in the Joint Status Report prohibited either party from moving for summary judgment or conducting discovery on the merits during the initial phase of discovery."  Reply at 9-10.  It notes

-12-

that it "granted Plaintiff nearly three months to respond after filing this Motion on December 21, 2010." Reply at 10. BCR asserts that Lucero has had the opportunity to conduct depositions of several individuals since the time it filed its Motion. See Reply at 10. BCR contends that Lucero's pleadings contain no allegations that Dunn was not actively in charge of the collection agency. See Reply at 11. It argues that, "even if such a claim were at issue, there is no genuine issue of material fact that BCR was acting in full compliance with" the Collection Agency Regulatory Act "at all times relevant to this case." Reply at 11. BCR notes that the regulation requiring the licensed manager to be actively in charge of the collection agency applies only to the procurement of the license as opposed to any requirement as to how the licensed manager fulfills their duties. See Reply at 11.

At the hearing on April 28, 2010, Lucero stated that he was not ready to fully respond to the Motion for the following reasons: (i) he did not have sufficient notice that the Motion would be heard at the hearing; (ii) BCR has raised additional arguments in its Reply; and (iii) he planned to conduct a deposition of another person within the agency responsible for enforcing the Collection Agency Regulatory Act. See Transcript of Hearing at 2:22-3:12 (taken April 28, 2010)(Wells)("Apr. 28, 2010 Tr.").[12] Lucero asserted that he would be able to argue the issues relating to the offer of judgment under rule 68 of the Federal Rules of Civil Procedure. See Apr. 28, 2010 Tr. at 4:8-17 (Wells). BCR represented that its client had followed Vigil's interpretations and statements regarding the Collection Agency Regulatory Act. See Apr. 28, 2010 Tr. at 6:22-7:6 (Langenwalter). Lucero reiterated that BCR had raised its arguments pertaining to affirmative defenses in its Reply and not in its Motion. See Apr. 28, 2010 Tr. at 13:22-14:17 (Wells). The

---

[12]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

Court then granted Lucero's request to file a surreply.  See Apr. 28, 2010 Tr. at 17:12-18:10 (Wells, Court, Langenwalter).

On May 4, 2010, Lucero filed his Surreply, because, "in its reply brief, defendant asserts an additional argument and a new affirmative defense previously not raised."  Surreply at 1.  He argues that BCR cannot establish a bona-fide-error affirmative defense under the 15 U.S.C. § 1692(c) based on a mistake of law or, alternatively, during summary judgment based on disputed factual issues. See Surreply at 5-7.  He also notes that BCR cannot rely on the affirmative defense contained in 15 U.S.C. § 1692k(e), because it never sought an advisory opinion on its practices.  See Surreply at 5. Lucero further asserts that the agency charged with enforcing the Collection Agency Regulatory Act has not issued any applicable rules or regulations on which BCR has alleged it relied to establish a defense under N.M.S.A. § 61-18A-4C.  See Surreply at 5-6.

Following the remand of this case from the Tenth Circuit, the Court held a status conference on July 26, 2011.  See Clerk's Minutes at 1, filed July 26, 2011 (Doc. 74).  Lucero requested that the Court certify some of the issues in the case to the Supreme Court of New Mexico, specifically: (i) what qualifies as a licensed manager being actively in charge of a collection agency; (ii) whether the method in which BCR maintained records at the office in New Mexico satisfied the applicable provisions of the Collection Agency Regulatory Act; and (iii) whether BCR's office in New Mexico qualifies as a bona fide collection agency.  See Transcript of Hearing at 4:9-25 (taken July 26, 2011)(Wells)("July 26, 2011 Tr.").  BCR stated that it felt the issues were sufficiently clear that certification to the Supreme Court of New Mexico was not necessary.  See July 26, 2011 Tr. at 6:2-18 (Anderson, Court).  BCR sought clarification whether Lucero still needed additional discovery to properly address the issues raised in the Motion.  See July 26, 2011 Tr. at 8:9-21 (Anderson). Lucero stated that no additional discovery was needed for the issues that the Motion raises.  See Tr.

at 11:7-8 (Wells).

At the hearing on February 2, 2012, BCR asserted that Lucero's theory for his claims extends existing case law in an unsupportable manner. See Transcript of Hearing at 3:22-4:4 (taken February 2, 2012)(Court)("Feb. 2, 2012 Tr."). BCR argued that the Collection Agency Regulatory Act does not contain a private cause of action and that the Court should thus dismiss the claim asserted in Count I. See Feb. 2, 2012 Tr. at 4:10-14 (Anderson). The Court inquired whether state or federal law would apply regarding implied causes of action. See Feb. 2, 2012 Tr. at 4:15-19 (Court). BCR asserted that state law would control. See Feb. 2, 2012 Tr. at 4:20-25 (Anderson). Lucero then stated that he concedes that he cannot maintain a cause of action under the Collection Agency Regulatory Act. See Feb. 2, 2012 Tr. at 5:3-11 (Wells). Lucero agreed to dismissal of Count I but not to dismissal of the allegations contained in that Count. See Feb. 2, 2012 Tr. at 6:15-18 (Court, Wells). BCR conceded that some courts have decided that not having a license to collect debts as required under state law can support a FDCPA cause of action. See Feb. 2, 2012 Tr. at 7:12-16 (Anderson). It argued that those cases are distinguishable, because the debt collection agencies in those cases had no right under state law to collect debt when they had not obtained a license, while it is undisputed that BCR had a license. See Feb. 2, 2012 Tr. at 7:16-8:20 (Anderson, Court). BCR characterized Lucero's argument as asserting that BCR should have never received a license to collect debt under New Mexico law. See Feb. 2, 2012 Tr. at 9:10-25 (Anderson). It argued that engaging in such an inquiry improperly second guesses the agency who issued the license and who has not disputed that the license is valid. See Feb. 2, 2012 Tr. at 9:10-10:9 (Anderson). BCR noted that its New Mexico license to collect debts has been renewed several times. See Feb. 2, 2012 Tr. at 12:13-21 (Anderson).

BCR asserted that the statements from Verant's deposition to the effect that Dunn's

maintenance of her residential office and interactions with debtors may be problematic do not create genuine issues of material fact, because the respective agency has never taken action to revoke Dunn's or BCR's license.  See Feb. 2, 2012 Tr. at 13:18-14:2 (Anderson).  BCR represented that, although it believes it is in compliance with the Collection Agency Regulatory Act, any fraud committed on an agency is something for an agency to police and is not actionable by private citizens.  See Feb. 2, 2012 Tr. at 14:9-23 (Anderson).  BCR contended that Lucero is asking the Court to review a New Mexico agency's decisions, the adequacy of its investigations, and the intelligence of the agency's conclusions.  See Feb. 2, 2012 Tr. 15:18-23 (Anderson).  BCR asserted that there are reasons for a state to choose to implement a statutory scheme in this manner and avoid private enforcement, as a scheme that involved private enforcement could deter businesses from entering the state.  See Feb. 2, 2012 Tr. at 16:22-17:11 (Anderson).  BCR also argued that it has acted in good faith within the definition of the good-faith defense provided under the Collection Agency Regulatory Act.  See Feb. 2, 2012 Tr. at 17:16-21 (Anderson).  BCR noted that Vigil has now retired from the state agency, but did so after he submitted his affidavit.  See Feb. 2, 2012 Tr. at 18:3-8 (Court, Anderson).  The Court questioned whether it should give agency practices deference when they have gone through no formal process, such as rulemaking.  See Feb. 2, 2012 Tr. at 18:21-19:6 (Court).  BCR responded that it is entitled to rely on the agency's issuance of a license.  See Feb. 2, 2012 Tr. at 19:7-22 (Anderson).

Lucero contended that, when a business receives a license, it represents that it will comply with the terms of the license.  See Feb. 2, 2012 Tr. at 21:15-22:1 (Wells).  Lucero noted that the license BCR obtained states that it is subject to certain conditions, restrictions, and limitations.  See Feb. 2, 2012 Tr. at 22:4-11 (Wells).  He argued that BCR impliedly represented that it would comply with the state requirements to have a license.  See Feb. 2, 2012 Tr. at 22:12-17 (Wells).  BCR stated

-16-

that few, if any, cases have permitted a plaintiff to establish a FDCPA violation on the theory Lucero has presented. See Feb. 2, 2012 Tr. at 24:8-13 (Wells). Lucero asserted that BCR cannot rely on the defenses available under the FDCPA or under the Collection Agency Regulatory Act, because its reliance on Vigil's interpretation of the Collection Agency Regulatory Act does not fall within the contemplation of these defenses and because the Supreme Court of the United States has recently held in Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S.Ct. 1605 (2010), that a mistake of law cannot establish a bona-fide-error defense under the FDCPA. See Feb. 2, 2012 Tr. at 25:6-26:20 (Wells). The Court questioned whether the FDCPA empowers a plaintiff to enforce any violation of state law regarding debt collection even when a plaintiff cannot enforce those provisions under state law. See Feb. 2, 2012 Tr. at 26:24-27:8 (Court). Lucero argued that a plaintiff should be able to assert an FDCPA cause of action when the state law violation involves something that the business must do to be licensed in a State to collect debt. See Feb. 2, 2012 Tr. at 27:9-15 (Wells). He emphasized that it is questionable whether BCR's New Mexico office was in compliance with the Collection Agency Regulatory Act. See Feb. 2, 2012 Tr. at 27:23-28:10 (Wells). The Court said that it would be in a difficult position if it concluded that BCR is violating state law and the New Mexico agency charged with enforcing that law then concluded that BCR was not violating that law. See Feb. 2, 2012 Tr. at 28:22-29:4 (Court). Lucero suggested certifying the state law issues in the case to the Supreme Court of New Mexico. See Feb. 2, 2012 Tr. at 29:14-30:5 (Wells). Lucero noted that Verant emphasized in his deposition that Vigil's interpretations of the Collection Agency Regulatory Act do not reflect the agency's legal position. See Feb. 2, 2012 Tr. at 30:2-22 (Wells). Lucero contended that failing to comply with the state requirements to have a license makes the license void. See Feb. 2, 2012 Tr. at 31:8-17 (Wells).

With respect to Dunn's electronic access to records, Lucero asserted that Dunn has access

to these records electronically only if she contacts a main BCR office in Minnesota by electronic transmission or telephone.  <u>See</u> Feb. 2, 2012 Tr. at 32:10-15 (Wells).  He represented that Dunn maintains no documents or records at this home office.  <u>See</u> Feb. 2, 2012 Tr. at 33:23-34:6 (Wells).  Lucero argued that this conduct is not in compliance with New Mexico law.  <u>See</u> Feb. 2, 2012 Tr. at 34:12-17 (Court).  The Court inquired whether state agency officials had a preference regarding how BCR maintains records in its New Mexico office.  <u>See</u> Feb. 2, 2012 Tr. at 34:25-35:4 (Court). Lucero conceded that it does not appear that the officials who had worked with BCR in the past had any preference.  <u>See</u> Feb. 2, 2012 Tr. at 35:5-12 (Wells).  BCR contended that there have been no difficulties in providing records to the state agency in the past.  <u>See</u> Feb. 2, 2012 Tr. at 35:23-36:6 (Anderson).  When asked by the Court if other States' debt collection statutes are largely identical to New Mexico's statutes, BCR noted that other States have similar statutes but that they do have somewhat different requirements.  <u>See</u> Feb. 2, 2012 Tr. at 37:24-38:7 (Court, Anderson).  BCR represented that the purpose behind the Collection Agency Regulatory Act is for New Mexico to be able to monitor debt collection agencies operating within the state, such as in situations where the State receives complaints from a debtor about a debt collection agency's practices.  <u>See</u> Feb. 2, 2012 Tr. at 36:17-37:4 (Anderson); <u>id.</u> at 38:8-17 (Anderson).  BCR emphasized the difficulties that would arise if private citizens tried to enforce these state licensing requirements, some of which it asserted involve subjective considerations.  <u>See</u> Feb. 2, 2012 Tr. at 40:8-41:3 (Anderson).  BCR agreed that the New Mexico license is a revocable privilege.  <u>See</u> Feb. 2, 2012 Tr. at 41:15-22 (Anderson).  BCR represented that it was not relying on the bona-fide-error defense under the FDCPA.  <u>See</u> Feb. 2, 2012 Tr. at 42:15-43:7 (Anderson).  It argued that it is relying on the defense in the Collection Agency Regulatory Act regarding retroactive changes to rules and changes to interpretations of rules in a way that prejudices a business who holds a license.  <u>See</u> Feb. 2, 2012 Tr.

at 43:3-7 (Anderson).  BCR noted that Lucero has not set forth any allegations that it has defrauded any state agency in procuring its license.  <u>See</u> Feb. 2, 2012 Tr. at 43:8-25 (Anderson).

Lucero emphasized that, as part of a motion for summary judgment, the Court should consider whether there are material questions of fact.  <u>See</u> Feb. 2, 2012 Tr. at 45:9-13 (Wells).  The Court expressed its reservations about going beyond a license when a state has chosen to issue a license to a debt collection agency and there is no private enforcement mechanism within the respective statutory scheme.  <u>See</u> Feb. 2, 2012 Tr. at 45:21-46:6 (Court).  The Court expressed its concern that state and federal legislatures may not have intended such private enforcement to take place.  <u>See</u> Feb. 2, 2012 Tr. at 46:15-18 (Court).  Lucero emphasized that the office BCR maintained in New Mexico was not easily accessible to the public and not open to the public.  <u>See</u> Feb. 2, 2012 Tr. at 46:19-47:8 (Wells).  Lucero suggested that it would be ideal to bring in testimony from industry and consumer groups on some of these issues, as well as testimony from someone who was in the New Mexico Legislature when it passed the Collection Agency Regulatory Act.  <u>See</u> Feb. 2, 2012 Tr. at 48:5-10 (Wells).

### <u>STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)</u>

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Moore v. Guthrie</u>, 438

F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 545 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1940. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S Ct. at 1974)(citations omitted).

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a

properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at

-22-

249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING THE FDCPA

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  "Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."  Johnson v. Riddle, 305 F.3d 1007, 1117 (10th Cir. 2002).

> [T]o establish a prima facie case for violation of the FDCPA requires plaintiff to plead and prove four elements:
>
> (1)  the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692c(d) for purposes of a cause of action pursuant to 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11);

(2)     the "debt" arises out of a transaction entered primarily for personal, family, or household purposes; 15 U.S.C.A. § 1692a(5);

(3)     the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and

(4)     the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A.

If any of these elements are not met, a case may be defended on that basis.

Duncan v. Citibank (S.D.), N.A., No. 06-246, 2006 WL 4063023, at *5 (D.N.M. June 30, 2006)(Browning, J.)(quoting 29 M. Wengert, Causes of Action 2d 1 § 49 (2005)). While the FDCPA forbids a variety of conduct,

> [t]he substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f.

Johnson v. Riddle, 305 F.3d at 1117. "The FDCPA also establishes specific duties and prohibitions governing debt collectors' communication with third parties, § 1692b, and communication with the debtor, §§ 1692c, 1692g, 1692j." Johnson v. Riddle, 305 F.3d at 1117 n.8. "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010)(citing 15 U.S.C. § 1692k; Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010)).  In addition to containing a general proscription against any false, deceptive, or misleading representation or means in connection with the collection of any debt, 15 U.S.C. § 1692e provides a lengthy list containing a variety of behaviors that per se qualify as "a violation of this section," including: (i) "[t]he threat to take any action that cannot legally be taken or that is not intended to

-24-

be taken" and (ii) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer."  15 U.S.C. § 1692e.

    **1.**      **Misrepresentations and the Least-Sophisticated Consumer Standard.**

      When determining whether an alleged misrepresentation violates 15 U.S.C. § 1692e, the Tenth Circuit has, in an unpublished opinion, "applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector."  Ferree v. Marianos, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997)(unpublished table decision)(quoting Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir.1996))(internal quotation marks omitted).  At least five other United States Courts of Appeals have applied this same test in the context of alleged 15 U.S.C. § 1692e violations.  See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)(gathering authority from the United States Courts of Appeals for the Third, Sixth, Ninth, and Eleventh Circuits).  This least sophisticated consumer test inquires into "how the least sophisticated consumer -- one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer -- understands the notice he or she receives."  Ferree v. Marianos, 1997 WL 687693, at *1 (quoting Russell v. Equifax A.R.S., 74 F.3d at 34)(citing Terran v. Kaplan, 109 F.3d 1428, 1431 (9th Cir.1997)).  For example, "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate."  Russell v. Equifax A.R.S., 74 F.3d at 35.  "The hypothetical consumer, however, 'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'"  Ferree v. Marianos, 1997 WL 687693, at *1 (quoting Clomon v. Jackson, 988 F.2d at 1319).  Additionally, the least-sophisticated consumer standard requires courts, "as a matter of law, . . . not [to] entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter."  McMillan v. Collection Prof'ls Inc., 455 F.3d

754, 758 (7th Cir. 2006).  Accord Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 611 (6th Cir.

2009)("Nonetheless, the standard 'also prevents liability for bizarre or idiosyncratic interpretations

of collection notices by preserving a quotient of reasonableness and presuming a basic level of

understanding and willingness to read with care.'").

 Determining whether a representation would mislead the least-sophisticated consumer is

generally a question of fact.  See McMillan v. Collection Prof'ls Inc., 455 F.3d at 758 ("In the

context of a § 1692g claim, we have stated that [h]ow a particular notice affects its audience is a

question of fact . . . ." (first alteration in original)(internal quotation marks omitted)).[13]

Nevertheless, "courts have increasingly treated as questions of law, various judgments about the way

in which the least sophisticated consumer would interpret particular debt collection claims."

Schweizer v. Trans Union Corp., 136 F.3d 233, 237-38 (2d Cir. 1998)(internal quotation marks

omitted); Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 508 n.2 (6th Cir. 2007)("We have

determined that '[i]t is well-settled that courts may properly make the objective determination

whether language effectively conveys a notice of rights to the least sophisticated debtor.'"

(alternation in original)).  For example, "[a] plaintiff might rest on the text of the communication,

and have no other evidence to offer, and then if there was nothing deceptive-seeming about the

communication" to even the least-sophisticated consumer, "the court would have to dismiss the

case."  Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 776 (7th Cir. 2007).  As the

Seventh Circuit has related:

---

 [13]Some courts have permitted a plaintiff, to demonstrate the existence of a genuine issue of
material fact regarding a particular representation, to rely on targeted consumer surveys to determine
if a particular representation is misleading.  See McMillan v. Collection Prof'ls Inc., 455 F.3d at 758
("In the context of a § 1692g claim, we have stated that "[h]ow a particular notice affects its
audience is a question of fact, which may be explored by testimony and devices such as consumer
surveys.'" (alteration in original)).

> There might also be a case in which a false or deceptive statement clearly was immaterial, as in Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 738-40 (7th Cir. 2004); see also Pettit v. Retrieval Masters Creditor Bureau, Inc., supra, 211 F.3d at 1060-62, or was clarified elsewhere, as in McStay v. I.C. System, Inc., 308 F.3d 188, 191 (2d Cir. 2002), or in which a statement claimed to be false was obviously true as in Taylor v. Cavalry Investment, L.L.C., supra, 365 F.3d at 575-76.

Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d at 777.  Additionally, courts have shown more willingness to dismiss FDCPA misrepresentation claims on summary judgment as opposed to on a rule 12(b)(6) motion to dismiss.  See McMillan v. Collection Prof'ls Inc., 455 F.3d at 759 ("[T]he court was therefore determining whether the record in that case contained a genuine issue of triable fact, a different and significantly more demanding standard than the Rule 12(b)(6) standard applicable in this case.").

## 2.    Unfair or Unconscionable Means.

With respect to unconscionability, courts have noted: "Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by 'unfair' or "unconscionable.'" LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010). See also Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir. 2007)(Easterbrook, J.)("What is 'unfair or unconscionable'?  The statute does not say.").  The United States Court of Appeals for the Eleventh Circuit has relied upon these terms' plain meaning for a definition:

> The plain meaning of "unfair" is "marked by injustice, partiality, or deception." Significantly, in Jeter [v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985)], we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair . . . if it has the tendency or capacity to deceive." Jeter, 760 F.2d at 1172.  The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." Black's Law Dictionary 1526 (7th ed.1999).

LeBlanc v. Unifund CCR Partners, 601 F.3d at 1200 (footnotes omitted)(alterations in original).

The United States Court of Appeals for the Seventh Circuit has rejected an approach that a debt collector acts in an unfair or unconscionable manner when "a debt collector . . . violate[s] any other rule of positive law."   Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d at 473-74. As the Seventh Circuit explained:

> There are two problems with Beler's approach.  First, § 1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law.  This is not a piggyback jurisdiction clause.  If the Law Firm violated the Social Security Act, that statute's rules should be applied.  Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship.
>
> Second, the Law Firm did not violate any anti-attachment rule.  No exempt property reached GE Capital.  The citation used the precise language required by state law telling the Bank not to turn over any exempt asset and informing it that a judgment debtor has a right to a hearing before any property is transferred to a creditor.

Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d at 474 (citations omitted).  Courts have generally applied the least-sophisticated consumer standard when evaluating questions of unconscionability.  See McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 952 (9th Cir. 2011)("The FDCPA measures a debt collector's behavior according to an objective 'least sophisticated debtor' standard."); LeBlanc v. Unifund CCR Partners, 601 F.3d at 1201 & n.33 ("Accordingly, consistent with the other circuits that have decided the issue, we hereby adopt the 'least-sophisticated consumer' standard for § 1692f analyses.").

### 3.   Interrelation Between the FDCPA and State Law.

The Eleventh Circuit has stated:

> In terms of the relationship between the FDCPA and state consumer protection laws . . . , the FDCPA does not "annul, alter, affect, or exempt" any person or entity subject to its provisions from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are

inconsistent with the FDCPA.

LeBlanc v. Unifund CCR Partners, 601 F.3d at 1191 (quoting 15 U.S.C. § 1692n).  "[A] State law is not inconsistent with" the FDCPA "if the protection such law affords any consumer is greater than the protection provided by" the FDCPA.  15 U.S.C. § 1692n.  "[T]he FDCPA 'establishes minimum boundaries for unlawful debt collection, leaving intact state laws which provide higher levels of consumer protection from collection activity.'"  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1191 n.11 (quoting 104 Am. Jur. Proof of Facts 3d 1, § 5 (2009)).

Some federal courts have recognized that a plaintiff can maintain a "cause of action pursuant to Section 1692e of the FDCPA for threatening to take an action that cannot be legally taken . . . when premised upon a failure to register as a consumer collection agency as required by state law." LeBlanc v. Unifund CCR Partners, 601 F.3d at 1189-90.  Accord Russey v. Rankin & TCA, Inc., 911 F.Supp. 1449, 1459 (D.N.M. 1995)(Vasquez, J.)("Therefore, this Court finds that Defendant TCA violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692f by engaging in collection activity in this state without a license, and Plaintiff will be granted Summary Judgment on these claims."); Gaetano v. Payco of Wis., Inc., 774 F.Supp. 1404, 1414-16 (D. Conn. 1990).  These courts have permitted such causes of action even when the respective state act requiring registration would not make actionable the same conduct.  See LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192 ("Unifund contends that because an analogous provision of the FCCPA does not itself support a private right of action for failure to register, then to premise a federal cause of action upon the same conduct and legal theory would undermine or circumvent the state's consumer protection scheme.  We disagree.").

Courts have cautioned, however, that not "all debt collector actions in violation of state law constitute per se violations of the FDCPA."  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.

"Rather, the conduct or communication at issue must also violate the relevant provision of the

FDCPA."  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.  As the United States Court of

Appeals for the Eighth Circuit has explained:

> The FDCPA was designed to provide basic, overarching rules for debt collection
> activities; it was not meant to convert every violation of a state debt collection law
> into a federal violation.   Only those collection activities that use "any false,
> deceptive, or misleading representation or means," including "[t]he threat to take any
> action that cannot legally be taken" under state law, will also constitute FDCPA
> violations.  In contrast to the collection agency's actions in Picht, even if FRA was
> violating Minnesota law by not having the Seattle lockbox licensed (and we have
> concluded that it was not), that violation would not constitute a false or misleading
> representation.

Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004)(citations omitted).  For

example, the Eighth Circuit concluded that a debt collector's "attempt to use [a] garnishment

procedure prior to entry of judgment" in a manner "not authorized under Minnesota law" resulted

in a violation of 15 U.S.C. § 1692e(5) because the debt collector could not legally take that action.

Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001).  In contrast, in a case where the

defendant had obtained a license under Minnesota law, the Eighth Circuit found no FDCPA

violation where the defendant allegedly violated a Minnesota statute on debt collector licensing

when it had "debt payments sent directly to its unlicensed Seattle, Washington, post office box."

Carlson v. First Revenue Assurance, 359 F.3d at 1017-19.  The Eighth Circuit explained:

> The purpose behind the Minnesota requirement that all locations be licensed
> is to ensure that if a collection agency abuses its license, Minnesota regulators know
> where to find it. If FRA's Seattle address was licensed, even ignoring the Minnesota
> statute that requires a licensee to provide a street address rather than a post office
> box, Minnesota regulators seeking accountability from FRA in Seattle would find
> only a bank account. FRA is, and always has been, located in Denver.  This is its
> location, and on the record in this case it is the only location that needs to be
> licensed.
>
> The record reveals that Minnesota Department of Commerce regulators do
> not require licensing of lockboxes such as FRA's; all they require is that the

-30-

remittance slips prominently state that only payments should be sent to the lockbox and that all other correspondence should be sent to the licensed address. While the agency's position is not binding on us, its interpretation increases our confidence in the result that we have come to.

. . . . [E]ven if FRA was violating Minnesota law by not having the Seattle lockbox licensed (and we have concluded that it was not), that violation would not constitute a false or misleading representation.

Carlson v. First Revenue Assurance, 359 F.3d at 1018 (citations omitted).

### 4.    **Bona-Fide-Error Defense.**

15 U.S.C. § 1692k(c) provides "an affirmative defense" to FDCPA violations, which courts

refer to as "[t]he bona fide error defense." Johnson v. Riddle, 443 F.3d 723, 727 (10th Cir. 2006).

This subsection states:

(c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "[A]n FDCPA defendant seeking the protection of the bona fide error defense

carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and

3) made despite the maintenance of procedures reasonably adapted to avoid the error." Johnson v.

Riddle, 443 F.3d at 727-28. The Tenth Circuit has interpreted "the intent prong of the FDCPA's

bona fide error defense" as requiring "a debt collector [to] show that the violation was unintentional,

not that the underlying act itself was unintentional." Johnson v. Riddle, 443 F.3d at 728. This

question of intent "is a subjective test." Johnson v. Riddle, 443 F.3d at 728. The Supreme Court

has recently held that a mistaken interpretation of the FDCPA's requirements will not establish a

bona-fide-error defense under this statute, based on the general principle "that ignorance of the law

will not excuse any person, either civilly or criminally," from liability, and that, "when Congress

-31-

has intended to provide a mistake-of-law defense to civil liability, it has often done so more explicitly."  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S.Ct. at 1611-12.

## LAW REGARDING THE COLLECTION AGENCY REGULATORY ACT

The Collection Agency Regulatory Act forbids a business from engaging in certain debt collection activities in New Mexico as a collection agency or a collection agency manager without first obtaining a license.  See N.M.S.A. 1978, § 61-18A-5.  This act authorizes criminal penalties for violation of its provision.  See N.M.S.A. 1978, § 61-18A-6.  The Collection Agency Regulatory Act contains no private enforcement mechanism.  See N.M.S.A. 1978, §§ 61-18A-1 through 61-18A-32.

A person makes an application for a license under this act to "the director of the financial institutions division of the regulation and licensing department."  N.M.S.A. 1978, §§ 61-18A-2(B), 61-18A-7.  An application requires a variety of information, including: (i) the name under which the applicant will do business; and (ii) the location by street number and city in New Mexico of the office of the business for which the license is sought.  See N.M.S.A. 1978, § 61-18A-8.  An individual seeking a license must also provide their full residence address.  See N.M.S.A. 1978, § 61-18A-8.  With respect to foreign entities seeking to engage in debt collection in New Mexico, they must "establish and maintain a full time bona fide collection agency in [New Mexico] at all times during the life of any license issued to it" to obtain a license.  N.M.S.A. 1978, § 61-18A-14. The local collection agency of the foreign entity must maintain its records in its "principal office in New Mexico of such agency."   N.M.S.A. 1978, § 61-18A-14.   A licensee is required to "conspicuously display[]" its license "at the place of business noted in the license at all times." N.M.S.A. 1978, § 61-18A-18. Additionally, "[e]very licensed office of a collection agency whether a principal or branch office shall be under the active charge of a licensed manager," which requires

-32-

that "a licensed manager . . . be physically present at the licensee's office at least seventy-five percent of the time during which the office is open for business."  N.M.S.A. 1978, § 61-18A-22.

## RELEVANT LAW REGARDING LICENSING

While courts have authority to review agency decisions on licensing, that authority generally only arises in situations where the legislature has contemplated that courts have authority to review agency decisions on licensing, usually in an appellate fashion.  See, e.g., Sorenson v. Nat'l Transp. Safety Bd., 684 F.2d 683, 684 (10th Cir. 1982)("The petitioner, Lee Sorenson, seeks review of the National Transportation Safety Board's order revoking his commercial pilot certificate."); City of Fredericksburg, Va. v. Fed. Energy Regulatory Comm'n, 876 F.2d 1109, 1113 (D.C. Cir. 1989)("We vacate the license and remand the case to FERC to allow CHI to reapply for licensing after properly requesting water quality certification from the Commonwealth of Virginia.").[14]  Additionally, when

---

[14]For example, under the Administrative Procedure Act, 5 U.S.C. §§ 500-96, Congress has authorized federal courts to review agency licensing decisions that are final agency actions:

> The APA, under which CNE's CWA claim is brought limits judicial review not otherwise provided by statute to "final agency action for which there is no other adequate remedy in a court."

> . . . .

> The APA defines agency action to include "the whole or a part of an agency . . . license."  License is defined to include "the whole or a part of an agency permit."  The Crow Creek and Green Mountain AOIs are licenses because, as they expressly state, they are "included as part of" the previously issued grazing permits. . . .

> . . . .

> The Crow Creek and Green Mountain AOIs also constitute final action. Under the Supreme Court's decision in Bennett v. Spear, agency action is final if it satisfies two requirements: "First, the action must mark the consummation of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or

courts have the authority to review an agency's licensing decision, they usually apply deferential standards of review to the agency's decision.   See, e.g., Am. Scholastic TV Programming Foundation v. FCC, 46 F.3d 1173, 1182-83 (D.C. Cir. 1995)(holding that, in the context of a statutory requirement that "license applicants . . . provide information on their financial qualifications," a court must apply "a deferential standard of review," and affirm "the agency's conclusions if they 'are supported by the record and . . . are not arbitrary or capricious" in reviewing agency's determination that the applicant provided "reasonable assurances" regarding their ability to secure funding).

In New Mexico, licensees have a variety of procedural protections before facing revocation or suspension of their license under the New Mexico version of the Administrative Procedures Act, N.M.S.A. 1978, § 12-8-1 to 12-8-25 ("APA").  See N.M.S.A. 1978, § 12-8-14 (providing a variety of procedural safeguards for license revocation or suspension proceedings).  Additionally, those seeking to appeal a licensing decision in New Mexico, much like under federal law, can seek judicial review of a licensing decision -- assuming the that decision qualifies as a final order or decision in an adjudicatory proceeding.  See N.M.S.A. 1978, § 12-8-16 ("Any party who has exhausted all administrative remedies available within the agency and who is adversely affected by a final order or decision in an adjudicatory proceeding may appeal . . . .").  During judicial review of a final decision by an agency, a New Mexico court "may set aside, reverse or remand the final decision if it determines that: (1) the agency acted fraudulently, arbitrarily or capriciously; (2) the final decision was not supported by substantial evidence; or (3) the agency did not act in accordance with law."

---

obligations have been determined, or from which legal consequences will flow."

Ctr. for Native Ecosystems v. Cables, 509 F.3d 1310, 1328-29 (10th Cir. 2007)(citations omitted).

N.M.S.A. 1978, § 39-3-1.1(D).  Like the respective federal standards, this standard of review is a deferential one.  See N.M.S.A. 1978, § 39-3-1.1(D); Lantz v. Santa Fe Extraterritorial Zoning Auth., 136 N.M. 74, 76, 94 P.3d 917, 819 (Ct. App. 2004)("[W]e will not disturb a final agency decision unless it was fraudulent, arbitrary, or capricious; not supported by substantial evidence; or otherwise not in accordance with law.").

## ANALYSIS

Because Lucero has conceded that he cannot maintain a cause of action under the Collection Agency Regulatory Act, the Court will grant the Motion with respect to Count I.  The Court concludes that Lucero has not established the existence of a genuine issue of material fact as to his FDCPA claim on the following two theories: (i) violation of the general prohibition against misrepresentations contained in 15 U.S.C. § 1692e on the basis that BCR allegedly misrepresented it was authorized to collect debts; and (ii) violation of 15 U.S.C. § 1692e(10) on the basis that BCR used a false representation or deceptive means to collect debt, because it was not authorized to collect debt under state law.  Additionally, the Court concludes that Lucero has not established the existence of a genuine issue of material fact as to his FDCPA theories under 15 U.S.C. §§ 1692e(5) and 1692f.  The Court concludes entry of summary judgment is appropriate under the controlling law and authority.  Lastly, because BCR has identified no New Mexico rule or regulation upon which it in good faith relied, and because a state law affirmative defense does not provide a defense to a federal cause of action, the Court will not grant summary judgment on that ground relating to BCR's affirmative defense under N.M.S.A. 1978, § 61-18A-4(C).

## I.    BECAUSE THE PARTIES HAVE AGREED TO DISMISSAL OF COUNT I, THE COURT WILL ENTER JUDGMENT ON COUNT I.

Because the parties agree that Lucero cannot maintain a private cause of action under the

Collection Agency Regulatory Act and that the Court should dismiss Count, the Court will enter judgment on Count 1.  Lucero stated at the hearing on February 2, 2012 that the Court could dismiss Count 1.  <u>See</u> Feb. 2, 2012 Tr. at 6:15-18 (Court, Wells).  Based on Lucero's request, the Court will not, however, dismiss the allegations contained in Count 1.  <u>See</u> Feb. 2, 2012 Tr. at 6:15-18 (Court, Wells).

## II.    <u>THE COURT WILL ENTER SUMMARY JUDGMENT ON COUNT II.</u>

Count II alleges that BCR violated the FDCPA as a result of the following conduct: (i) engaging in false, deceptive or misleading collection activities by representing that it was authorized to collect debts from Lucero and the members of the class, in violation of the general prohibition against misrepresentations in 15 U.S.C. § 1692e; (ii) threatening to take action that cannot be legally taken against Lucero and the class in violation of 15 U.S.C. § 1692e(5), because BCR could not take any legal action without full compliance with the Collection Agency Regulatory Act; (iii) using false representations or deceptive means to collect or to attempt to collect a debt based on BCR's implicit representation through letters and/or telephone calls to Lucero that it was authorized to collect debts in New Mexico, in violation of 15 U.S.C. § 1692e(10); and (iv) engaging in unfair and unconscionable methods of debt collection in violation of 15 U.S.C. § 1692f by acting unlawfully against Lucero within the New Mexico.  <u>See</u> Complaint ¶ 56, at 8-9.  Count II relies in part on some of the allegations in Count I, which alleges that BCR committed various violations of the Collection Agency Regulatory Act.  Specifically, Lucero alleges that BCR violated the Collection Agency Regulatory Act, because Dunn failed to: (i) maintain a "full-time bona fide collection agency" in New Mexico at BCR's licensed manager; (ii) have Dunn be actively in charge of the collection agency in New Mexico; (iii) maintain records of BCR's local collection practices at her home office, which is BCR's principal office in New Mexico; and (iv) "conspicuously"

display the required licenses at BCR's principal place of business in New Mexico.  Complaint ¶ 47, at 7.

BCR makes the following argument in support of dismissal of Lucero's FDCPA claims and theories:

> Plaintiff's theory in bringing his claims under the FDCPA depends upon BCR having violated the Collection Act.  Thus, Plaintiff's claims fail as it has been shown in the previous section that there is no genuine issue as to the facts which establish that BCR acted as a duly authorized licensed collection agency in compliance with all applicable provisions of the Collection Act.  First, Plaintiff's claims under Sections 1692e and e(10) fail because BCR was "authorized" to collect debts in New Mexico.  Second, Plaintiff's claims under Sections 1692e(5) and 1692f fail because BCR acted in compliance with the Collection Act at the times relevant to its attempted collection of Plaintiff's debt.  Therefore, Plaintiff's theory fails since there were no underlying violations of the Collection Act.  Accordingly, this Court should also grant summary judgment in BCR's favor regarding Plaintiff's FDCPA claims.

Motion at 13.  BCR relies heavily on Vigil's interpretations of the Collection Agency Regulatory Act and his conclusions that BCR was complying with all applicable provisions of the act.  See Motion at 10-12.  BCR has conceded that some courts have decided that not having a license to collect debts as required under state law can support a FDCPA cause of action.  See Feb. 2, 2012 Tr. at 7:12-16 (Anderson).  It argued that those cases are distinguishable, because the debt collection agencies in those cases had no right under state law to collect debt when they had not obtained a license, while it is undisputed that BCR had a license.  See Feb. 2, 2012 Tr. at 7:16-8:20 (Anderson, Court).  BCR characterized Lucero's argument as asserting that BCR should have never received a license to collect debt under New Mexico law.  See Feb. 2, 2012 Tr. at 9:10-25 (Anderson).  It argued that engaging in such an inquiry improperly second guesses the agency who issued the license and who has not disputed that the license is valid.  See Feb. 2, 2012 Tr. at 9:10-10:9 (Anderson).  BCR represented that, although it believes it is in compliance with the Collection Agency Regulatory Act, any fraud committed on an agency is something for an agency to police and

is not actionable by private citizens.  See Feb. 2, 2012 Tr. at 14:9-23 (Anderson).  BCR contended

that Lucero is asking the Court to review a New Mexico agency's decisions, the adequacy of its

investigations, and the intelligence of the agency's conclusions.  See Feb. 2, 2012 Tr. 15:18-23

(Anderson).  BCR asserted that there are reasons for a state to chose to implement a statutory

scheme in this manner and avoid private enforcement, as a private-enforcement scheme could deter

businesses from entering the state.  See Feb. 2, 2012 Tr. at 16:22-17:11 (Anderson).

> **A.   THE COURT WILL ENTER SUMMARY JUDGMENT ON LUCERO'S FDCPA THEORIES FOR VIOLATIONS OF THE GENERAL PROHIBITION ON MISREPRESENTATIONS IN 15 U.S.C. § 1692e AND 15 U.S.C. § 1692e(10).**

The Court will enter summary judgment on Lucero's FDCPA theories for: (i) violation of

the general prohibition against misrepresentations contained in 15 U.S.C. § 1692e on the basis that

BCR allegedly misrepresented it was authorized to collect debts; and (ii) violation of 15 U.S.C.

§ 1692e(10) on the basis that BCR used a false representation or deceptive means to collect debt,

because it was not authorized to collect debt under state law.  "[T]he FDCPA 'establishes minimum

boundaries for unlawful debt collection, leaving intact state laws which provide higher levels of

consumer protection from collection activity.'"  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1191

n.11.  Some federal courts have recognized that a plaintiff can maintain a "cause of action pursuant

to Section 1692e of the FDCPA for threatening to take an action that cannot be legally

taken . . . when premised upon a failure to register as a consumer collection agency as required by

state law."  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1189-90.  Accord Russey v. Rankin &

TCA, Inc., 911 F.Supp. at 1459.  Gaetano v. Payco of Wis., Inc., 774 F.Supp. at 1414-16.  Courts

have permitted such causes of action even when the respective state act requiring registration would

not make actionable the same conduct.  See LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.

Courts have cautioned, however, that not "all debt collector actions in violation of state law constitute per se violations of the FDCPA." LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192. "Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA." LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192. As the Eighth Circuit has explained:

> The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation. Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA violations. In contrast to the collection agency's actions in Picht, even if FRA was violating Minnesota law by not having the Seattle lockbox licensed (and we have concluded that it was not), that violation would not constitute a false or misleading representation.

Carlson v. First Revenue Assurance, 359 F.3d at 1018 (citations omitted).

It is undisputed that BCR had a license under the Collection Agency Regulatory Act to collect debt. Thus, there was no misrepresentation as to its authority under state law to collect debt. Under New Mexico law, BCR was authorized to collect debt until its license was revoked, suspended, or not renewed by the NMRLD. There are no indications that the NMRLD ever sought to undertake such proceedings regarding BCR's license. If such proceedings for license revocation had begun, there might be an arguable basis for proceeding on the general misrepresentation theory under 15 U.S.C. § 1692e or under 15 U.S.C. § 1692e(10) on the basis that BCR lacked authority to collect debt under New Mexico law. Under N.M.S.A. § 12-8-14(A), "no agency shall revoke, suspend or refuse to renew any license unless it has first afforded the licensee an opportunity for hearing in conformity with Section 10, 11, 12, 13, and 15 of the Administrative Procedures Act." N.M.S.A. § 12-8-14(A). The applicable provisions of New Mexico's APA provide for: (i) a full and fair hearing; (ii) reasonable notice of the proceedings; (iii) the right to present evidence and

argument; (iv) the right to call and cross-examine witnesses; (v) the right to representation of counsel; (vi) and various other procedural protections.  See N.M.S.A. 1978, §§ 12-8-10 through 12-8-13, 12-8-15.  Until such proceedings took place, BCR had the legal right to collect debt under New Mexico law and was thus not misrepresenting its authority to collect debt under state law.

As BCR has argued, Lucero's assertions that BCR could not collect debt in New Mexico unless it was at all times complying with each applicable provision of the Collection Agency Regulatory Act are not persuasive.  An argument to that effect might be persuasive if the NMRLD had instituted license revocation proceedings before engaging in the allegedly prohibited conduct under the FDCPA.  The Collection Agency Regulatory Act forbids a business from engaging in certain debt collection activities in New Mexico as a collection agency or a collection agency manager without first obtaining a license.  See N.M.S.A. 1978, § 61-18A-5.  A license application requires a variety of information, including: (i) the name under which the applicant will do business; and (ii) the location by street number and city in New Mexico of the office of the business for which the license is sought.  See N.M.S.A. 1978, § 61-18A-8.  With respect to foreign entities seeking to engage in debt collection in New Mexico, they must "establish and maintain a full time bona fide collection agency in [New Mexico] at all times during the life of any license issued to it" to obtain a license.  N.M.S.A. 1978, § 61-18A-14.  The local collection agency of the foreign entity must maintain its records in its "principal office in New Mexico of such agency."  N.M.S.A. 1978, § 61-18A-14.  A licensee is required to "conspicuously display[]" its license "at the place of business noted in the license at all times."  N.M.S.A. 1978, § 61-18A-18.  Additionally, "[e]very licensed office of a collection agency whether a principal or branch office shall be under the active charge of a licensed manager," which requires that "a licensed manager . . . be physically present at the licensee's office at least seventy-five percent of the time during which the office is open for

business." N.M.S.A. 1978, § 61-18A-22.

While Lucero is correct that compliance with all these regulations is required by the Collection Agency Regulatory Act, this statute phrases compliance with almost all these regulations as either a precondition to obtaining a license or as a basis upon which to revoke, suspend, or refuse to renew a license. BCR has never faced, however, license revocation, suspension, or a refusal to renew its license. It is undisputed that the NMRLD had issued a license to BCR to engage in debt collection activities that was outstanding during the time period underlying Lucero's claims -- the key requirement it needed under the Collection Agency Regulatory Act to collect debt in New Mexico. Additionally, Lucero has put forward no facts to suggest that the NMRLD sought to revoke, suspend, or not renew BCR's license. Even if the NMRLD had sought to revoke, suspend, or not renew BCR's license, the agency would have to comply with a variety of procedures specified in New Mexico's APA to finalize those licensing proceedings. BCR had full authority to collect debt under New Mexico law, because it complied with the requirements in N.M.S.A. 1978, § 61-18A-5[15] by obtaining a license before engaging in debt collection activity. Even if BCR was violating some provisions of the Collection Agency Regulatory Act after it had obtained a license, such violations under New Mexico law would not affect its license until the NMRLD had followed

---

[15]The relevant part of this statute provides:

No person shall conduct within this state a collection agency, act as a collection agency manager or engage within the state in the business of collecting claims for others or of soliciting the right to collect or receive payment from another of any claim or advertise or solicit either in print, by letter, in person or otherwise, the right to collect or receive payment for another of any claim or seek to make collection or obtain payment of any claim on behalf of another without having first applied for and obtained the licenses required by the Collection Agency Regulatory Act.

N.M.S.A. 1978, § 61-18A-5(A).

-41-

the requirements necessary to enforce those provisions of the Collection Agency Regulatory Act.

As some courts have recognized, noncompliance with the general licensing requirement like the one

New Mexico has can potentially provide a basis for a cause of action under the FDCPA. See

LeBlanc v. Unifund CCR Partners, 601 F.3d at 1189-90; Russey v. Rankin & TCA, Inc., 911

F.Supp. at 1459 ("Therefore, this Court finds that Defendant TCA violated 15 U.S.C. §§ 1692e,

1692e(5), 1692e(10) and 1692f by engaging in collection activity in this state without a license, and

Plaintiff will be granted Summary Judgment on these claims."); Gaetano v. Payco of Wis., Inc., 774

F.Supp. at 1414-16. That is, however, not the situation presented here. Because there is no

misrepresentation as to BCR's authority to collect debt, and because BCR employed no false or

deceptive means in relation to its authority to collect debt, even the least sophisticated consumer

could not be misled by the notice BCR sent Lucero -- which does not refer in any manner to BCR's

ability to collect debt under New Mexico law. See Complaint at 11-14 (providing the notices sent

to Lucero as exhibits to the Complaint). There is no genuine issue of material fact as to a FDCPA

misrepresentation claim when "a statement claimed to be false [is] obviously true," here whether

BCR had authority under New Mexico law to engage in debt collection. Evory v. RJM Acquisitions

Funding L.L.C., 505 F.3d at 777. Lucero has directed the Court to no authority that would counsel

in favor of a different result or that would support extension of liability under the FDCPA to the

extent Lucero has sought to expand this liability. Consequently, the Court will enter summary

judgment on Lucero's FDCPA theories for: (i) violation of the general prohibition against

misrepresentations contained in 15 U.S.C. § 1692e on the basis that BCR allegedly misrepresented

it was authorized to collect debts; and (ii) violation of 15 U.S.C. § 1692e(10) on the basis that BCR

used a false representation or deceptive means to collect debt, because it was not authorized to

collect debt under state law.

**B.     THE COURT WILL GRANT SUMMARY JUDGMENT ON LUCERO'S THEORIES UNDER 15 U.S.C. §§ 1692e(5) AND 1692f.**

To support entry of summary judgment on or dismissal of Lucero's FDCPA claims asserted under a misrepresentation theory under 15 U.S.C. § 1692e(5), because BCR allegedly threatened to take action that could not legally take, and under 15 U.S.C. § 1692f, BCR bases its argument on its compliance with the various provisions of the Collection Agency Regulatory Act, such as: (i) maintaining a bona fide collection agency; (ii) having Dunn actively be in charge of the New Mexico office; (iii) displaying its license conspicuously; and (iv) maintaining records at its New Mexico office.  BCR relies heavily on Vigil's statements to support its argument.  Based on the evidence BCR has put forward and its arguments that no courts have permitted a plaintiff to maintain a cause of action under the FDCPA in circumstances similar to those present in this case, BCR has met its initial burden for summary judgment and has shifted the burden to Lucero.  See Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002)("Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law.").

Some federal courts, including the Eleventh Circuit, have recognized that a plaintiff can maintain a "cause of action pursuant to Section 1692e of the FDCPA for threatening to take an action that cannot be legally taken . . . when premised upon a failure to register as a consumer collection agency as required by state law."  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1189-90.  Accord Russey v. Rankin & TCA, Inc., 911 F.Supp. at 1459; Gaetano v. Payco of Wis., Inc., 774 F.Supp. at 1414-16.  These courts have permitted such cause of actions under the FDCPA even when the respective state act requiring registration would not make actionable the same conduct.

-43-

See LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.  Courts have cautioned, however, that not "all debt collector actions in violation of state law constitute per se violations of the FDCPA." LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.  "Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA."  LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.  As the Eighth Circuit has explained:

> The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.  Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA violations.  In contrast to the collection agency's actions in Picht, even if FRA was violating Minnesota law by not having the Seattle lockbox licensed (and we have concluded that it was not), that violation would not constitute a false or misleading representation.

Carlson v. First Revenue Assurance, 359 F.3d at 1018 (citations omitted).

When determining whether an alleged misrepresentation violates 15 U.S.C. § 1692e, the Tenth Circuit has in an unpublished opinion "applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector."  Ferree v. Marianos, 1997 WL 687693, at *1.  Determining whether a representation would mislead the least-sophisticated consumer is generally a question of fact.  See McMillan v. Collection Prof'ls Inc., 455 F.3d at 758.  This least-sophisticated consumer test inquires into "how the least sophisticated consumer -- one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer -- understands the notice he or she receives."  Ferree v. Marianos, 1997 WL 687693, at *1.  Courts have generally applied the least-sophisticated consumer standard when evaluating questions of unconscionability under the

FDCPA.[16]  See McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d at 952 ("The

FDCPA measures a debt collector's behavior according to an objective 'least sophisticated debtor'

standard."); LeBlanc v. Unifund CCR Partners, 601 F.3d at 1201 & n.33.

 If Lucero seeks to rely on a violation of state law to establish a FDCPA cause of action, he

must show: (i) that there is a violation of a state law; and (ii) that violating that state law also results

in a violation of some FDCPA provision.  See LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.

There are no genuine issues of material fact or of law that BCR did not violate one provision of the

Collection Agency Regulatory Act.  Lucero did not dispute BCR's asserted fact that Dunn

conspicuously displayed the required licenses at her home office as required by N.M.S.A. 1978,

§ 61-18A-18.

 There are more significant questions about whether BCR was in violation of other provisions

within the Collection Agency Regulatory Act.  Under New Mexico law, a court's central concern,

in construing a particular statute, "is to determine and give effect to the intent of the legislature,"

State ex rel. Klineline v. Blackhurst, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988), "using the

plain language of the statute as the primary indicator of its intent," City of Santa Fe v. Travelers Cas.

& Sur. Co., 147 N.M. 699, 702, 228 P.3d 483, 486 (2010).[17]  Courts give "the words used in the

---

 [16]As the Court has already mentioned, the Tenth Circuit has in an unpublished opinion applied this least-sophisticated consumer standard to misrepresentation claims under the FDCPA. See Ferree v. Marianos, 1997 WL 687693, at *1.  The Court has found no cases addressing whether the Tenth Circuit would apply this standard to 15 U.S.C. § 1692f.

 [17] Because the federal court is applying New Mexico law, it follows that it should apply state law as faithfully as a lower state court in New Mexico would.  Accordingly, the Court should apply the rules of statutory construction that New Mexico state courts apply, to the extent that federal and state rules of construction differ.  See United States v. Ruiz, 589 F.3d 1310, 1313 (10th Cir. 2009)("When the highest [state] court . . . has not interpreted a particular state statutory provision, . . . a federal court must examine state appellate court opinions and other authorities to predict how the [highest] court would interpret [that particular provision].  In doing so, a federal court must

statute their ordinary meaning unless the legislature indicates a different intent."  State ex rel. Klineline v. Blackhurst, 106 N.M. at 735, 749 P.2d at 1114 (citation omitted).  If a statute defines a term, a New Mexico court must apply the statutory definition of that term.  See Cadena v. Bernalillo Cnty. Bd. of Cnty. Comm'rs, 139 N.M. 300, 304, 131 P.3d 687, 692 (Ct. App. 2006)("When words are defined in the statute, we must interpret the statute according to those definitions, because those definitions reflect what the legislative intent is.").

Although BCR relies heavily on Vigil's interpretations of the Collection Agency Regulatory Act, BCR did not dispute Lucero's asserted fact that scope of Vigil's duties at the applicable time periods did not include the formulation of legal interpretations of the provisions of the Collection Agency Regulatory Act.  See Surreply ¶ 4, at 2; Verant Depo. at 12:17-20.  While deference to a state administrative agency's interpretation of statutes which it is charged to enforce may be entitled to deference, it is difficult to see how the Court can give Vigil's interpretations of what acts are in compliance with this statute when his superior, the director of the Financial Institutions Division, expressly represents that Vigil's authority does not include the formulation of legal interpretations of this act.  See Reames v. Okla. ex rel. Okla. Health Care Auth., 411 F.3d 1164, 1170 (10th Cir. 2005)(recognizing that some level of deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), may be warranted in appropriate circumstances for a state agency's legal interpretations).  While Vigil may have had some enforcement authority and may have concluded that BCR was in compliance with the Collection Agency Regulatory Act, his legal interpretations would not be as persuasive as those of his superior, Verant, who happens to be the

---

follow state rules of statutory construction." (citations omitted)(internal quotation marks omitted)); Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3, Fed. Sec. L. Rep. P 96,599, 2011 WL 5840482, at *122 n.40 (D.N.M. 2011)(Browning, J.).

director of the Financial Institutions Division within the NMRLD; this agency is charged with enforcing the Collection Agency Regulatory Act.  See Reames v. Okla. ex rel. Okla. Health Care Auth., 411 F.3d at 1170.  Verant, when posed with a factual scenario highly similar to the conduct in which BCR and Dunn have engaged, asserted that those actions were likely in noncompliance with the Collection Agency Regulatory Act.  See Surreply ¶ 5, at 2 (setting forth this fact); Verant Depo. at 40:4-41:1.  Verant's interpretation of this act would be much more persuasive than Vigil's and would be the interpretation to which the Court should owe deference, assuming the Court should give either opinion deference.   In any case, given that there are some disputes about the interpretation of the act, the best that the Court can infer is that Vigil has been knowingly tolerating some conduct in the state that his superior, Verant, believed were in violation of New Mexico law when brought to his attention.

There are an absence of facts in the record to determine whether BCR was in compliance with N.M.S.A. 1978, § 61-18A-8 as to Dunn being "actively in charge" of BCR's collection agency, N.M.S.A. 1978, § 61-18A-8, and BCR has consequently failed to carry its initial burden entitling it to summary judgment on this issue that it complied with this provision, see Reed v. Bennett, 312 F.3d at 1194.  The term active means "working; operative" or "in continuous use."  New Oxford American Dictionary 16 (Angus Stevenson & Christine A. Lindberg eds., 3d ed. 2010).  N.M.S.A. 1978, § 61-18A-22(B) provides a definition for the phrase "under the active charge of a licensed manager": "a licensed manager must be physically present at the licensee's office at least seventy-five percent of the time during which the office is open for business."  N.M.S.A. 1978, § 61-18A-22(B).  Neither party has directed the Court to facts that would allow the Court to determine whether Dunn was at the business seventy-five percent of the time during which the office is open for business.  Ultimately, even if BCR violated this provision, Lucero must still be able to establish

that a violation of this provision would support a cause of action under the FDCPA.  BCR could still be entitled to summary judgment if the FDCPA would not permit a cause of action based on a violation of this statute.  See LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.

Under the facts presented and drawing all reasonable inferences in Lucero's favor, the Court concludes that BCR would be in violation of the with the provisions of the Collection Agency Regulatory Act regarding maintaining a "full time bona fide collection agency in this state," N.M.S.A. 1978, § 61-18A-14, and maintaining records regarding its in-state debt collection activities at its New Mexico office, see N.M.S.A. 1978, § 61-18A-14.  Lucero has cited to portions of Dunn's deposition which call into question BCR's compliance with certain provisions in the Collection Agency Regulatory Act.  For instance, he directs the Court to statements from Dunn indicating: (i) that she serves as a licensed manager in New Mexico for approximately forty debt collection businesses; (ii) that she has contact with her supervisor at BCR only once a year; (iii) that she receives a limited amount of guidance on her job functions from BCR; (iv) that she has no physical or electronic records relating to Lucero's debt at her office; (v) that she has never talked with her homeowner's association about operating a business out of her home; (vi) that she has no business telephone listing for this office; (vii) that she makes no business decisions about debt collection other than on licensing issues; (viii) that she did not permit Lucero to enter her residence/office when he came to obtain information about his debt; (ix) that Lucero would not have been able to obtain information regarding his debt without producing the notice he had received regarding the debt; (x) that nothing outside her home indicates that it is a business; (xi) that there is a restrictive covenant on her property restricting her use of the property for commercial or non-residential purposes; and (xii) that Dunn has had minimal involvement in debt collection activities.  See Response ¶ 8, at 2; Dunn Depo. at 37:18-38:1, 42:1-24, 43:21-48:4, 51:9-16, 57:11-67:14, 73:15-17,

-48-

74:18-76:1, 78:5-79:15.

The Court of Appeals of New Mexico has used the following definition for the term bona fide: "made in good faith without fraud or deceit . . . made with earnest or wholehearted intent . . . not specious or counterfeit." Alexander v. Anderson, 126 N.M. 632, 636, 973 P.2d 884, 888 (Ct. App. 1999). Given that Dunn works for approximately forty other collection agencies, did not permit Lucero to enter her office, maintains her office in a gated community, has little contact with BCR or involvement in debt collection activities, has no business telephone listing for her office, has no sign outside her home indicating it is an office, and has a restrictive covenant on her home preventing her from using her home for commercial purposes, the Court concludes that New Mexico courts would find that BCR was not maintaining a full time bona fide collection agency within the meaning of N.M.S.A. 1978, § 61-18A-14. See Dunn Depo. at 37:18-38:1, 42:1-24, 43:21-48:4, 51:9-16, 57:11-67:14, 73:15-17, 74:18-76:1, 78:5-79:15. Viewing all the facts in the light most favorably to Lucero, this office was not a bona fide office under New Mexico courts' definition for the term bona fide. Viewing the facts in the light most favorably to Lucero, BCR does not appear to have been acting in good faith in maintaining this office or acting with an earnest or wholehearted intent as to its efforts to maintain an office. The Court finds it persuasive that Verant has reached the same conclusion, see Verant Depo. at 40:4-41:1, given that the phrase bona fide is subject to some interpretation and potential ambiguity, see Reames v. Okla. ex rel. Okla. Health Care Auth., 411 F.3d at 1170. The Court believes that the Supreme Court of New Mexico, if presented with these issues, would decide that BCR's maintenance of a home office, with one person in charge of forty collection agencies, in a gated residential community, where the public is denied access would not constitute a "full time bona fide collection agency" under New Mexico law. N.M.S.A. 1978, § 61-18A-14,

N.M.S.A. 1978, § 61-18A-14 requires licensees to maintain "records" of local collection agency activities in a principal office in New Mexico. The term record means "a thing constituting a piece of evidence about the past" such as "an account of an act or occurrence kept in writing or some other permanent form." New Oxford American Dictionary, supra, at 1459. It is unclear whether New Mexico courts would recognize electronic records which are not stored at an office, but that may be requested by fax or email, as "records . . . maintained at the principal office" under N.M.S.A. 1978, § 61-18A-14. N.M.S.A. 1978, § 61-18A-14. Based on the plain meaning of the term records, the statute would not seem to permit maintenance of records in this fashion. When a term within a statute is susceptible to multiple meanings and a state agency is charged with enforcing that statute, courts will often defer to the state agency's interpretation of that term. See Reames v. Okla. ex rel. Okla. Health Care Auth., 411 F.3d at 1170. Here, Verant, the director of the agency charged with enforcing the Collection Agency Regulatory Act, stated in his deposition that maintaining records in this manner is not likely in compliance with this act. See Verant Depo. at 40:4-41:1. Verant's opinion is persuasive in light of the ambiguity of this term record within the statute. While the issue is not before the Court, the Court believes that the Supreme Court of New Mexico would likely find, in 2012, that having records stored in an electronic form would constitute proper maintenance of records within the meaning of N.M.S.A. 1978, § 61-18A-14. The Court also believes, however, that being able to access records only by request from an office outside of New Mexico would not constitute maintenance of records within the meaning of this statute. Under the facts presented to the Court and viewing those facts in the light most favorably to Lucero, BCR was not maintaining records in compliance with New Mexico law.

A violation of one of these state statutes alone, however, will not by itself support a federal cause of action under the FDCPA. See LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.

"Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA." LeBlanc v. Unifund CCR Partners, 601 F.3d at 1192.  15 U.S.C. § 1692e(5) makes it actionable to "use any false, deceptive, or misleading representation or means in collection of any debt" by way of a "threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  15 U.S.C. § 1692f makes it actionable to "use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Notably, there are no provisions in the FDCPA requiring a debt collector to maintain any form of office within a state in which it engages in debt collection activity or to maintain records of its local collection activities.  The most similar requirement to one that would require a debt collector to maintain an office in a state where it engages in debt collection activities would be 15 U.S.C. § 1692i, which addresses certain venue requirements debt collectors must follow when bringing a legal action on a debt against a consumer.  See 15 U.S.C. § 1692i.[18]  Lucero has directed the Court to no regulations

---

[18]This statute provides:

    (a)     Venue

         Any debt collector who brings any legal action on a debt against any consumer shall --

         (1)     in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

         (2)     in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity --

             (A)     in which such consumer signed the contract sued upon; or

             (B)     in which such consumer resides at the commencement of the action.

    (b)     Authorization of actions

in the Code of Federal Regulations that impose requirements on debt collectors to maintain an office in a state or to store records at their office within a state.

The Court has carefully reviewed the communications BCR sent to Lucero.  There are no provisions in the communications that make any representations about BCR's office, where it keeps its records, or how often its manager is in charge of its principal office in the state.  See Complaint at 11-14 (providing copies of the communications BCR sent to Lucero).  There are no references to any of these requirements under New Mexico law.  See Complaint at 11-14.  Nothing in these communications mentions licensing or any specific New Mexico law with which BCR must comply. See Complaint at 11-14.  The communications refer to certain requirements that BCR must follow under federal law and state law for States other than New Mexico, but do not mention any New Mexico laws.  See Complaint at 11-14.  If BCR had in some way made an express misrepresentation that it was complying with state law when it was not, or misrepresented Lucero's rights under federal or New Mexico law, those statements could potentially qualify as actionable misrepresentations under the FDCPA.  There are no such statements in the communications that BCR sent to Lucero.  There is no genuine issue of material fact as to a FDCPA misrepresentation claim when "a statement claimed to be false [is] obviously true"; here, BCR had authority to engage in debt collection.  The Court does not believe that the communications violate the applicable misrepresentation provisions of the FDCPA.

While Lucero contends that BCR acted unlawfully under New Mexico law such that it should not have received a license or such that state regulators should have revoked its license, New

---

Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.

15 U.S.C. § 1692i.

Mexico regulators have not taken any actions regarding BCR's license that would impact its authority to collect debt in New Mexico.  See Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d at 777.  There is no sound reason for a federal court to look behind a state-issued license in this context and start enforcing state law that New Mexico courts have not heretofore definitively interpreted, and that New Mexico does not appear to view as an enforcement priority.  Thus, drawing all reasonable inferences in Lucero's favor, BCR has not violated 15 U.S.C. § 1692e(5) by "us[ing] any false, deceptive, or misleading representation or means in collection of any debt" by way of a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).  Lucero has directed the Court to no authority supporting his argument that a FDCPA violation occurs under this subsection in the present circumstance.  Even if Lucero could show that BCR has violated these state laws, he has not established that he can maintain a FDCPA cause of action when BCR had a license to collect debt under the Collection Agency Regulatory Act. As Lucero concedes, to adopt his theory of going behind the license in this context goes further than any court has gone in terms of FDCPA liability.

BCR has not engaged in any conduct that violates the FDCPA under the theories Lucero has alleged, even if it violated the state laws Lucero has alleged BCR violated.  As the Court has already discussed, BCR had full authority under New Mexico law to collect debt.  Given that BCR had full authority under New Mexico law to collect debt, it would be odd that the FDCPA would incorporate violations of state law for matters that may be important to help New Mexico's regulators but that involve little or no interaction with a debtor, or enforcement of a debt -- like maintaining an office in the state, maintaining records in that office, having a manager stay actively in charge of the office, and having the manager conspicuously display the required licenses.  These requirements might be important for a State, like New Mexico, but they are mostly parochial requirements that Congress

does not -- in coming up with a statute for the entire nation -- appear to have intended to require.

As the Eighth Circuit has stated: "The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation." Carlson v. First Revenue Assurance, 359 F.3d at 1018.  Accord LeBlanc v. Unifund CCR Partners, 601 F.3d at 1191 n.11 ("[T]he FDCPA 'establishes minimum boundaries for unlawful debt collection, leaving intact state laws which provide higher levels of consumer protection from collection activity.'").  The FDCPA expressly acknowledges this reality with a savings clause for state law that is not inconsistent with the FDCPA:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.  For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n.  Furthermore, many of these state debt collection requirements, for which Lucero has conceded there is no private right of action in New Mexico, are designed so that the state may keep track of debt collectors operating within the state and obtain the necessary information from them if the state has concerns about their activities.  As the Eighth Circuit discussed in a similar case to the present one:

> The purpose behind the Minnesota requirement that all locations be licensed is to ensure that if a collection agency abuses its license, Minnesota regulators know where to find it.  If FRA's Seattle address was licensed, even ignoring the Minnesota statute that requires a licensee to provide a street address rather than a post office box, Minnesota regulators seeking accountability from FRA in Seattle would find only a bank account.  FRA is, and always has been, located in Denver.  This is its location, and on the record in this case it is the only location that needs to be licensed.

Carlson v. First Revenue Assurance, 359 F.3d at 1018.

For similar reasons, Lucero has not shown that BCR "use[d] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The Eleventh Circuit has provided the following definitions for unfair and unconscionable:

> The plain meaning of "unfair" is "marked by injustice, partiality, or deception." Significantly, in Jeter, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair . . . if it has the tendency or capacity to deceive." Jeter, 760 F.2d at 1172. The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." Black's Law Dictionary 1526 (7th ed. 1999).

LeBlanc v. Unifund CCR Partners, 601 F.3d at 1200 (footnotes omitted)(alterations in original). Given that BCR had a license under state law giving it authority to collect debt, it is difficult to characterize the alleged violations of state law, even assuming BCR did violate the statutes, as marked by injustice, unscrupulous means, or a lack of regard for conscience. Many multistate businesses in the United States do a lot less than BCR in terms of having a connection with a State, and the consumer would not likely see a long distance telephone call or an electronic transmission request for information about a debt as unconscionable or unfair. It is not unconscionable or unfair for BCR to maintain a main office in Minnesota which its other offices and consumers may rely upon for some matters. In fact, it is often easier in the twenty-first century, with the large amount of technology that is available, to get something electronically or to send a communication electronically rather than to drive across a large urban area to an office for information. Additionally, BCR had authority to collect debt in New Mexico until its licensed was suspended, revoked, or not renewed. The case might be a different one if New Mexico had instituted proceedings to revoke, suspend, or not renew BCR's license.

Furthermore, courts have recognized that violations of state law do not per se qualify as unfair or unconscionable means under this statute. The Seventh Circuit has rejected an approach

that a debt collector acts in an unfair or unconscionable manner when "a debt collector . . . violate[s]

any other rule of positive law."   Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d at

473-74.  As the Seventh Circuit explained:

> There are two problems with Beler's approach.  First, § 1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law.  This is not a piggyback jurisdiction clause.  If the Law Firm violated the Social Security Act, that statute's rules should be applied.  Likewise if the Law Firm violated Illinois law.  Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship.
>
> Second, the Law Firm did not violate any anti-attachment rule.  No exempt property reached GE Capital.  The citation used the precise language required by state law telling the Bank not to turn over any exempt asset and informing it that a judgment debtor has a right to a hearing before any property is transferred to a creditor.

Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d at 474 (citations omitted).

The Court finds it persuasive that no other provision in 15 U.S.C. § 1692f defining a per se

violation of that section resembles the alleged violations of New Mexico law Lucero seeks to

enforce through the FDCPA.   In addition to generally forbidding the "use of unfair or

unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f defines the

following conduct as per se violations of this section:

> (1)   The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> (2)   The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
>
> (3)   The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal

prosecution.

(4)     Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5)     Causing charges to be made to any person for communications by concealment of the true purpose of the communication.  Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6)     Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if --

(A)     there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B)     there is no present intention to take possession of the property; or

(C)     the property is exempt by law from such dispossession or disablement.

(7)     Communicating with a consumer regarding a debt by post card.

(8)     Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f.  When interpreting a general catch-all provision in a statute, courts normally apply "the maxim ejusdem generis, the statutory canon that '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'"  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001).  Nevertheless, "[b]ecause the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."  Johnson v. Riddle, 305 F.3d at 1117.  Courts may not, however, construe a statute more broadly than its language permits.  See United States v. La. Pac. Corp., 106 F.3d 345, 349 (10th Cir. 1997)("[A] court cannot interpret a statute in a way fundamentally inconsistent with its plain language in the name of liberal

construction.").

None of these specifically enumerated provisions in 15 U.S.C. § 1692f resemble the requirements under New Mexico law which Lucero alleges that BCR violated, such as maintaining an office in the state, maintaining records in that office, having a manager stay actively in charge of the office, and having the manager conspicuously display the required licenses.  The doctrine of ejusdem generis would counsel against expanding the catch-all provision for unfair or unconscionable conduct so broadly given that these New Mexico law requirements are noticeably dissimilar from these specifically enumerated provisions -- most of which relate to highly threatening or coercive conduct targeted directly at the debtor.  See Circuit City Stores, Inc. v. Adams, 532 U.S. at 114-15.  Furthermore, given that the FDCPA preserves state law that is not inconsistent with the FDCPA, the Court does not believe that there is a need to liberally construe this provision so that it incorporates any and all violations of state law.  See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d at 474.  "Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship."  Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d at 474.  The Court is not persuaded that it should interpret 15 U.S.C. § 1692f in the manner Lucero has requested.

To interpret the FDCPA the way that Lucero asks would make the protections of the FDCPA vary too extensively depending on where the plaintiff resides and could frustrate a State's decision not to provide a private right of action for some matters.  Such an interpretation would give a cause of action for things for which a State did not want there to be a cause of action, allowing plaintiffs to hold collection agencies liable for rather technical violations.  It would also give significantly more protections to plaintiffs in States with more detailed state regulations, which would take away

some of the benefits of uniformity one sees with a federal cause of action.  In the end, the ability to

sue in federal court for any number of violations of state debt-collection law might hurt consumers,

because States might not implement such regulations.  States may begin to fear that, even if there

was no private right of action under state law to enforce those laws, plaintiffs seeking to enforce

those laws in federal court could do so and ultimately drive businesses out of their state.  Instead of

being a floor, the FDCPA could become a ceiling by permitting private enforcement of state laws

for which there is no private right of action.

      While the issue is not before the Court, the Court recognizes the logic behind the decisions

that permit an FDCPA cause of action in circumstances where a debt collection agency is not

licensed under state law and engaged in debt collection activities without acquiring such a license --

a relatively uniform rule among courts that have addressed the issue.  The current situation is

distinguishable.  At the very least, collecting debt in violation of a state licensing requirement will

generally involve a relatively straightforward violation of 15 U.S.C. § 1692e(5), because the debt

collector is taking or threatening to take an "action that cannot legally be taken" without first

complying with that state law.  See 15 U.S.C. § 1692(e)(5).[19]  Even if that licensing requirement may

not be enforceable under state law, a violation of such a requirement falls more clearly within an

FDCPA provision than the current situation.  It is arguable that a plaintiff could maintain a cause

of action against a debt collector on a misrepresentation theory if the state has instituted license

revocation proceedings, but those are not the facts before the Court.  Indeed, this case does not

require the Court to even decide whether the failure to have a license required under state law would

---

[19]A debt collector could potentially violate other provisions in 15 U.S.C. § 1692e or
potentially 15 U.S.C. § 1692f depending on the specific representations in the communication to the
debtor or other conduct in which the debt collector engages -- such as representing that it is licensed
under state law.  See Gaetano v. Payco of Wis., Inc., 774 F.Supp. at 1414-16.

violate the FDCPA.  Those facts are not before the Court.  All the Court has to decide is whether

violations of certain provisions in the Collection Agency Regulatory Act would support an FDCPA

cause of action.  The Court concludes that the impractical expansion of liability under the FDCPA

Lucero has proposed is not supported by the FDCPA's terms and the applicable authority construing

the FDCPA.  Consequently, the Court concludes that summary judgment is appropriate for all of

Lucero's FDCPA claims and/or theories asserted in Count II.

### III.    BCR IS NOT ENTITLED TO RELY ON THE AFFIRMATIVE DEFENSE CONTAINED IN N.M.S.A. 1978, § 61-18A-4(C).

BCR has argued that it is entitled to summary judgment under the affirmative defense

contained in N.M.S.A. 1978, § 61-18A-4(C).  This statute provides:

> No provision of the Collection Agency Regulatory Act imposing any liability shall
> apply to any act done or omitted in good faith in conformity with any rule or
> regulation of the director, notwithstanding that after such act or omission has
> occurred, such rule or regulation is amended, rescinded or determined by judicial or
> other authority to be invalid for any reason.

N.M.S.A. 1978, § 61-18A-4(C).  BCR did not raise this argument in its Motion and instead raised

the argument in its Reply.  "[A]rguments raised for the first time in a reply brief are generally

deemed waived."  United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011).  The Court will

exercise its discretion to permit this argument, however, because Lucero had the opportunity to file

his Surreply and address the argument.

Lucero contends that this statutory defense does not apply to BCR's situation, as it applies

only to acts done or omitted in good faith in conformity with any rule or regulation of the director

of the Financial Institutions Division of the NMRLD.  BCR has directed the Court to no such rule

or regulation on which it relied that would establish a defense under this statute.  While BCR relies

extensively on information it received from Vigil, it has nowhere argued in its Motion or Reply that

the information was in a form other than informal communications.  It has cited to no rule or regulation on which it relied to establish a defense under this statute.  Assuming there were such a rule or regulation, BCR provides no explanation why, and cites no authority supporting its argument to the effect that, this affirmative defense to a violation of a <u>state statute</u> would allow it to avoid liability for a violation of the FDCPA, which provides a <u>federal cause of action</u>.  <u>See</u> <u>Howlett By and Through Howlett v. Rose</u>, 496 U.S. 356, 380 (1990)("A state court cannot refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers." (internal quotation marks omitted)).  <u>Cf</u>. <u>Alvarado v. Fed. Express Corp.</u>, 384 F.App'x 585, 590 (9th Cir. 2010)(unpublished)("FedEx does not make entirely clear whether it challenges the lack of an affirmative defense instruction on the federal and state law claims, or just the federal law claim."); <u>Resolution Trust Corp. v. Diamond</u>, 45 F.3d 665, 669 (2d Cir. 1995)("[W]hile a federal cause of action may be governed by federal policies, state-law causes of action are properly governed by state law.").  Finally, BCR did not dispute Lucero's asserted fact that the first time the New Mexico Financial Institutions Division received contact from BCR with questions concerning the interpretation of any provision of the Collection Agency Regulatory Act was in a telephone conversation which occurred on or about September 25, 2009.  The complained of conduct in Lucero's Complaint occurred in late 2008, which is before September 25, 2009.  <u>See</u> Complaint ¶¶ 6-8, at 2.  BCR could not have relied on that telephone conversation for purposes of this case, because it occurred after the complained of conduct.  Consequently, the Court will not grant summary judgment on this ground relating to this defense under N.M.S.A. 1978, § 61-18A-4(C). The Court will enter summary judgment on other grounds.  Lastly, BCR expressly disclaimed at the hearing that it was relying on the federal bona-fide-error defense under the FDCPA.  <u>See</u> Feb. 2,

2012 Tr. at 42:15-43:7 (Anderson).

**IT IS ORDERED** that Defendant Bureau of Collection Recovery Inc.'s Motion to Dismiss and Memorandum Brief in Support of its Motion to Dismiss or, Alternatively, Motion for Summary Judgment, filed December 21, 2009 (Doc. 34), is granted.  The Court will enter summary judgment on all Plaintiff Richard Lucero's claims.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alfred M. Sanchez
Law Offices of Alfred M. Sanchez
Albuquerque, New Mexico

*-- and --*

John M. Wells
Law Offices of John M. Wells, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Jennifer G. Anderson
Zachary R. Cormier
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*